IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROGER PIPKINS,

       Plaintiff,

v.                                                        CV 05-1200 WPL/RLP

TA OPERATING CORPORATION AND
TRAVEL CENTERS OF AMERICA, INC.
jointly, d/b/a TA TRAVEL CENTERS OF AMERICA,

       Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF BROCK CARTER**

Defendants filed a Motion in Limine to exclude testimony from Brock Carter, Plaintiff's expert on causation. (Doc. 63.) Defendants pursue a multi-prong approach in their quest to preclude Carter from testifying, arguing that: 1) Carter is not qualified to give an opinion regarding the condition of the ramp on which Plaintiff fell or the cause of Plaintiff's fall; 2) the methods and techniques that Carter used to measure the condition of the ramp are unreliable and are not generally accepted in the safety field; 3) Carter's opinion that the paint on the ramp caused Plaintiff's fall has not been subjected to peer review; 4) two of the sources Carter relied upon in coming to his conclusions are unreliable and are not generally accepted in the safety field; 5) Carter's causation opinion regarding Plaintiff's fall is unreliable because Carter did not consider alternative theories; and 6) Carter's opinion regarding the slope of the ramp should be excluded because it is irrelevant and more prejudicial than probative.

In response, Plaintiff contends that Carter is properly qualified to give expert testimony because he has obtained specialized knowledge in the area of safety through training and his many years of experience as a safety consultant. (Doc. 69.) Citing *Compton v. Subaru*, 82 F.3d 1513, 1518 (10th Cir. 1996), *cert. den*. 519 U.S. 1042 (1996), Plaintiff argues that courts only apply a *Daubert*[1] analysis where an expert relies on the application of scientific principles, and that Carter's testimony, which is based on his experience or training, falls outside the scope of *Daubert*. Plaintiff finally submits that Carter's testimony is relevant and will assist the trier of fact.

Under *Daubert*, when faced with a proffer of scientific testimony, the trial court is to make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue. *Daubert*, 509 U.S. at 592-93. *Daubert* lists several factors that can be considered by a trial court in making this determination, and other cases have listed additional factors that a court may consider, but the inquiry is flexible and the focus is primarily on the principles and methodology, not the conclusions generated. *Id*. at 593-95; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150-53 (1999). However, the conclusions and methodology are not entirely distinct from one another and a court may exclude evidence when there is too great an analytical gap between the data and the opinion offered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In a *Daubert* hearing, Plaintiff need not prove that his expert is indisputably correct or that his theories are "generally accepted" in the scientific community. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). Instead, Plaintiff must show, by a preponderance of the evidence, that the methods employed by his

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

expert in reaching his conclusions are scientifically sound and that their opinions are based on facts which satisfy Rule 702's reliability requirements. *Id*. Given the capabilities of juries to understand scientific evidence and weigh the credibility of competing experts, and the liberal thrust of the rules of evidence, any doubts regarding the admissibility of scientific evidence should be resolved in favor of admission, rather than exclusion. *Daubert*, 509 U.S. at 588-89, 595-96. The traditional methods of attacking shaky but admissible evidence are "[v]igorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof . . . ." *Id*. at 596. As the Seventh Circuit noted, "Trials would be very short if only perfect evidence were admissible." *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club*, 34 F.3d 410, 416 (7th Cir. 1994).

Plaintiff is, of course, incorrect in arguing that courts do not apply a *Daubert* analysis to testimony based on "technical" or "other specialized" knowledge. In *Kumho*, the Supreme Court specifically rejected this argument and held that *Daubert's* gatekeeping function applies not only when an expert "relies on the application of scientific principles," but also when an expert relies on "skill- or experience-based observation." 526 U.S. at 151. *Kumho's* abrogation of *Compton* on this issue was recognized by the Tenth Circuit more than six years ago. *United States v. Velarde*, 214 F.3d 1204, 1210 n.4 (10th Cir. 2000).

Plaintiff is correct that trial courts have substantial flexibility in deciding how to test an expert's reliability. *Kumho*, 526 U.S. at 152. The primary purpose of *Daubert* is to protect juries from confusing and unreliable expert testimony, and these concerns are lessened in a bench trial, where the court must evaluate the evidence regardless of whether the court ultimately decides to exclude it. *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1301-02 (Fed.Cir. 2002). Trial courts conducting bench trials have the flexibility to admit proffered expert testimony and then decide during

3

the course of trial whether the evidence meets the requirements of Rule 702. *United States v. Brown*, 279 F.Supp.2d 1238, 1243 (S.D. Ala. 2003) (quoting *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 635 (6th Cir. 2000) (Gilman, J., dissenting)). Judge Posner has expressed the view that since the primary purpose of *Daubert* is to protect juries from being "bamboozled by technical evidence of dubious merit," in a bench trial it is an acceptable alternative to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled:

> The Federal Circuit in *Seaboard Lumber*, . . . while pointing to the concern with protecting juries from confusion, did say that the *Daubert* standard must be followed in bench trials as well. But it did not say that it must be followed *rigidly* in such trials. *Daubert* requires a binary choice – admit or exclude – and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves.

*SmithKline Beecham Corp. v. Apotex Corp.*, 247 F.Supp.2d 1011, 1042 (N.D.Ill. 2003) (Posner, J., sitting by designation), *aff'd on other grounds*, 403 F.3d 1331 (Fed.Cir. 2005).

Defendants have raised serious questions about Brock Carter's qualifications to give the opinions he has given in this case, the methodology underlying his testimony, and the sources that he relied upon. Since neither party requested a jury trial, however, Defendants' *Daubert* concerns are less momentous. I will deny at this time Defendants' Motion in Limine to exclude the testimony of Carter. I will allow Carter to testify and will decide during trial or afterwards whether his testimony satisfies Rule 702's requirements. If it does I will give it the weight to which it is entitled, and if it does not I will strike it.

It is so ordered.

*William P. Lynch*
_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

5