# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROGER PIPKINS,

       Plaintiff,

v.                                        CV 05-1200 WPL/RLP

TA OPERATING CORPORATION AND
TRAVEL CENTERS OF AMERICA, INC.
jointly, d/b/a TA TRAVEL CENTERS OF AMERICA,

       Defendants.

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANTS' MOTION IN LIMINE
## TO EXCLUDE PHOTOGRAPHS
## OF SUBSEQUENT REMEDIAL MEASURES

In their Motion, Defendants seek to exclude two sets of photographs taken after Plaintiff's fall and all testimony regarding work performed on the ramp after Plaintiff's fall. First, Defendants seek to exclude the "photographs taken by Plaintiff's wife the day of the alleged fall depicting a sign placed on the ramp and white material on the ramp." (Doc. 77 at 1.) Second, Defendants seek to exclude "photographs taken by Plaintiff several months after the alleged fall depicting non-slip strips on the ramp." (Doc. 77 at 1.) According to Defendants, these photographs show subsequent remedial measures and thus fall squarely within the purview of Rule 407 of the Federal Rules of Evidence.

In response, Plaintiff contends that the photographs are admissible under Rule 407 for purposes other than the proscribed use of demonstrating Defendants' negligence. Plaintiff argues that the photographs serve the following five permissible purposes: 1) "[t]o refute the contention that Plaintiff was solely responsible for his injuries;" 2) "[t]o show the condition, position and slope of the

sidewalk;" 3) to show the Plaintiff's clothing; 4) "[t]o show the weather;" and 5) because Defendants "deny placing the sign and material at the location." (Doc. 73 at 3-4.)

DISCUSSION

Rule 407 of the Federal Rules of Evidence provides that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, [or] culpable conduct . . . . This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

Although federal law generally governs the admissibility of evidence in diversity cases, the Tenth Circuit has held that where there is a conflict between Rule 407 of the Federal Rules of Evidence and a similar state rule, the state rule controls because evidence of subsequent remedial measures implicates state "policy considerations rather than relevancy or truth seeking."[1]  *Moe v. Avions Marcel Dassault-Breguet Aviation*, 727 F.2d 917, 932 (10th Cir. 1984); *see also Garcia v. Fleetwood Enter's.*, 200 F. Supp. 2d 1302, 1303 (D.N.M. 2002) ("Pursuant to Tenth Circuit precedent [] the admissibility of subsequent remedial measures is a matter of state, not federal, law."); *Wilmer v. Board of County Comm'rs*, No. 92-3389, 1993 U.S. App. LEXIS 19650, at *3 (10th Cir. July 26, 1993) (unpublished) ("While federal law generally governs admissibility of evidence in diversity cases, this court held . . . that the admission of evidence regarding subsequent remedial

---

[1] New Mexico Rule of Evidence 11-407 provides that "[w]hen, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control or feasibility of precautionary measures, if controverted, or impeachment."

measures 'is so dependent on a state substantive policy that state law must be applied.'" (quoting *Romine v. Parman*, 831 F.2d 944, 945 (10th Cir. 1987))).

Recently, in *Sims v. Great American Life Ins. Co.*, No. 04-5135, 2006 WL 3200866 (10th Cir. Nov. 7), the Tenth Circuit held that the *Erie* Doctrine does not govern the federal rules of evidence. In reaching this conclusion, the court in *Sims* criticized the Tenth Circuit's prior decision in *Moe* for improperly relying on the *Erie* Doctrine. Instead, *Sims* established that the Supreme Court's decision in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) governs the application of the Federal Rules of Evidence in diversity cases. 2006 WL 3200866, at *6. *Sims* thus provides a two-part analysis federal courts sitting in diversity cases must apply to determine whether the Federal Rules of Evidence control in the face of a conflicting state rule. *Id.* First, the court must inquire whether the federal rule is substantive or procedural. *Id.* If the federal rule is arguably procedural, then that rule governs even if state substantive law "is on point." *Id.* If, however, the rule is substantive, *Sims* suggests that state substantive law governs as the rule of decision when a conflict arises between a federal rule and state substantive law. Determining whether a federal rule is substantive or procedural, therefore, is central to determining whether the Federal Rules of Evidence govern over a conflicting state rule. *Sims* instructs courts to resolve the "elusive" distinction between substantive and procedural rules in the following way:

> In short, although the distinction between substance and procedure is not always clear, we can distinguish a substantive rule from a procedural rule by examining the language and the policy of the rule in question. If these inquiries point to achieving fair, accurate, and efficient resolutions of disputes, the rule is procedural. If, however, the primary objective is directed to influencing conduct through legal incentives, the rule is substantive.

> *Id.* at *9.

3

Under such a framework, it appears that *Moe* continues to guide courts seeking to resolve conflicts between Rule 407 of the Federal Rules of Evidence and conflicting state law. *Moe* observed, albeit in what is now recognized as dicta, that "because Rule 407 is based primarily on policy considerations rather than relevancy or truth seeking, [a conflicting] state rule controls . . . ." 727 F.2d at 932. The Advisory Committee's Note to Rule 407 supports *Moe*'s observation of the policy considerations underlying Rule 407. The Advisory Committee recognized two grounds supporting Rule 407. First, the Committee recognized that subsequent remedial measures are "not in fact an admission, since the conduct is equally consistent with injury by mere accident or through contributory negligence." FED. R. EVID. 407 advisory committee's note. The Committee cautioned, however, that "[u]nder a liberal theory of relevancy this ground alone would not support exclusion as the inference is still a possible one." *Id.* Second, the committee observed "[t]he other, and more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Id.* The Advisory Committee's endorsement of the policy foundation of Rule 407 strongly suggests that "the primary objective [of Rule 407] is directed to influencing conduct through legal incentives . . . ." *Sims*, 2006 WL 3200866, at *9. In this light, *Sims* appears to have merely shifted the legal foundation of *Moe* from reliance on the *Erie* Doctrine to the more settled and clear framework established in *Stewart* while leaving intact *Moe*'s discussion of the policy considerations underlying Rule 407. This observation suggests that Rule 407 is a substantive rule, and not one of procedure. Accordingly, in evaluating whether to admit evidence of subsequent remedial measures, a federal court sitting in a diversity case must follow state law that conflicts with Rule 407.

4

### *To Refute the Contention that Plaintiff was Solely Responsible for his Injuries*

Plaintiff argues that evidence of subsequent remedial measures is admissible to impeach Defendants' assertion that Plaintiff "is solely responsible for his injuries, and to demonstrate the existence of a slippery substance on the ramp, which was made even more dangerous by the rainy condition." (Doc. 73 at 4.) According to Plaintiff, "Because Defendants have alleged that Plaintiff is at fault for his injuries, Plaintiff is entitled to impeach Defendants by demonstrating their subsequent remedial measures which included placing an obstruction and a white, pebble-like substance on the ramp upon which Plaintiff fell, tell otherwise [sic]." (Doc. 73 at 5.)

Plaintiff relies primarily on *Rimkus v. Northwest Colorado Ski Corp.*, 706 F.2d 1060, 1065 (10th Cir. 1983), which held that subsequent remedial measures are admissible to rebut an allegation of contributory negligence. Plaintiff contends that he should be able to introduce the photographs of the ramp taken after Plaintiff's fall to rebut Defendants' allegation that Plaintiff is "solely responsible for his injuries." (Doc. 73 at 4.)

In *Rimkus*, the plaintiff suffered injuries after falling off a rock outcropping at Steamboat Ski Area. 706 F.2d 1062. The defendant in *Rimkus* argued that "[the plaintiff] was injured as a result of his negligent failure to see the outcropping and to protect himself." *Id.* at 1063. To rebut the defendant's claim of contributory negligence, Rimkus sought to introduce photographs, taken after his accident, that depicted bamboo poles placed over the outcropping. *Id.* at 1064-65.

In reaching its holding that Rule 407 did not bar the photographs' admission, the Tenth Circuit observed that although the photographs showed subsequent remedial measures, the photographs were not introduced to prove the defendant's negligence. *Id.* at 1065. By alleging that the plaintiff was contributorily negligent in failing to see the outcropping and protect himself, the

defendant forced the plaintiff "to refute the testimony that he was able to see [the outcropping] prior to his going over the edge." *Id.* To do so, the plaintiff sought to present evidence of the subsequent remedial measures to refute the claim of contributory negligence. *Id.* In this light, the "challenged evidence [] was admitted for the purpose of undermining" testimony that the outcropping was visible for "a couple hundred feet." *Id.* Thus, the evidence of the subsequent remedial measures was not offered as proof of the defendant's own negligence, but rather to rebut the defendant's claim of contributory negligence. *Id.*

New Mexico case law, however, appears to differ from *Rimkus*'s holding that subsequent remedial measures are admissible to rebut a claim of comparative or contributory negligence.[2] *See Yardman v. San Juan Downs, Inc.*, 906 P.2d 742, 750 (N.M. Ct. App. 1995). In *Yardman*, the plaintiff, a jockey at the San Juan Downs, was injured when his horse swerved and threw him against a post and track railing. *Id.* at 746. The plaintiff alleged that the race track's negligence caused his injuries. *Id.* The track manager at the San Juan Downs testified that he believed the track was safe and that the plaintiff's action of shifting his weight had altered the horse's direction and resulted in the plaintiff's injuries. *Id.* at 748, 50. The trial court then permitted the plaintiff to cross-examine the track manager's testimony concerning subsequent remedial measures made to the track. *Id.* at 748.

In holding that the trial court erred in admitting evidence of the subsequent remedial measures, the Court of Appeals observed that "merely because a defendant denies that it was negligent and contends that it acted in a reasonable manner does not automatically open the door for

---

[2] New Mexico courts no longer follow the doctrine of contributory negligence. Instead, New Mexico courts follow the doctrine of comparative negligence. *See Scott v. Rizzo*, 634 P.2d 1234, 1236 (N.M. 1981) ("We hold that the doctrine of comparative negligence more equitably apportions damages and, in the interest of fundamental justice, is adopted in this jurisdiction and replaces the 'all-or-nothing' rule of contributory negligence.").

the admission of evidence of remedial action under the impeachment exception . . . ." *Id.* at 749. Additionally, the court observed that absent other evidence, the track manager's opinions that the path and gate were not dangerous and that the plaintiff's actions altered the direction of his horse "do not constitute a sufficient basis to ignore the raison d'etre of SCRA 11-407 so as to permit the admission of subsequent remedial measures under the impeachment exception." *Id.* at 750.

Because the Tenth Circuit's decisions in *Moe* and *Sims* require me to follow state law, I look to *Yardman* as controlling authority.[3]  The court in *Yardman* observed that the racetrack manager's testimony as to the safety of the track and his belief that the plaintiff's movement caused the accident did not "permit the admission of subsequent remedial measures under the impeachment exception." *Id.* The plaintiff in *Yardman* sought to admit subsequent remedial measures evidence to impeach the defendant's claim that the track was safe and that the plaintiff was responsible for his injuries. Here, Plaintiff similarly seeks to introduce evidence of subsequent remedial measures to impeach Defendants' assertion "that the ramp was safe and that the Plaintiff was solely at fault for his injuries." (Doc. 73 at 7.) This case does not present a situation where the admission of subsequent remedial measures is necessary to prevent Defendants from taking a position at trial that is inconsistent with the subsequent remedial measures. *See Rimkus*, 706 F.2d at 1064 (Rule 407 recognizes that precautionary measures taken after an accident are "not in fact an admission since it would also be

---

[3] *See West v. A.T. & T.*, 311 U.S. 223, 236-37 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."); *Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1000 (10th Cir. 2002) (regarding as authoritative a state decision "even though it was decided by the intermediate appellate court of Kansas, not the highest court of the state").

consistent with an injury due to contributory negligence").[4] Accordingly, the photographs at issue here do not fall within the impeachment exception to the rule excluding photographs of subsequent remedial measures and are not admissible to refute an allegation that Plaintiff was at fault for his injuries.

### To Show the Position, Condition, and Slope of the Sidewalk

Plaintiff argues that the photographs in Exhibit 1 should be admitted because "[t]hey are the best photos . . . of the slopes of the ramp and the abrupt end of the sidewalk that requires a pedestrian to leave the sidewalk." (Doc. 73 at 3.) To support this argument, Plaintiff points out that the photographs depicting the subsequent remedial measures are particularly important "given the fact that other than one photo produced by Defendants which shows the sidewalk going away from the building . . . Defendants don't have any of the other photos they took the day of the accident." (Doc. 73 at 3.)

Although Rule 407 generally bars the admission of subsequent remedial measures, the rule does not proscribe the admission of evidence showing the condition of a place or thing at the time of an injury, even though the evidence also reflects subsequent remedial measures. *See Cumming v.*

---

[4] It should be noted that *Rimkus* is not necessarily inconsistent with New Mexico state law. *Rimkus* could be read to stand for the limited proposition that "[t]he impeachment exception . . . is necessary to prevent litigants from taking 'unfair advantage' of [Rule 407] by adopting a position at trial that is inconsistent with their previous decision to take remedial measures after the accident." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1212 (10th Cir. 2006). In *Rimkus*, the defendant took the position that the plaintiff was contributorily negligent in failing to see the outcropping and protect himself. *Rimkus*, 706 F.2d at 1065. To underscore this argument, the defendant presented testimony regarding the 200-yard visibility on the ski run at the time of the plaintiff's accident. *Id.* In pursuing such an argument, the defendant had taken a position at trial that was inconsistent with the decision to take remedial measures after the accident. As the court in *Rimkus* noted, and as the Advisory Committee's Note to Rule 407 make clear, the rule excluding evidence of subsequent remedial measures rests on the idea that the decision to take subsequent remedial measures is not in fact an admission "since the conduct is equally consistent with injury by mere accident or through contributory negligence." FED. R. EVID. 407 advisory committee's note.

*Nielson's, Inc.*, 769 P.2d 732, 739 (N.M. Ct. App. 1988) (suggesting that photographs depicting subsequent remedial measures may, in appropriate circumstances, be admissible to show the condition of a place or thing at the time of an accident). Plaintiff contends that the photographs depicting the condition, position, and slope of the ramp, despite the presence of subsequent remedial measures, should be admitted to show the condition of the ramp at the time of Plaintiff's fall. A non-jury trial minimizes the risk that the admission of subsequent remedial measures will give rise to an inference forbidden by the Federal and New Mexico Rules of Evidence. Accordingly, I will allow Plaintiff to introduce evidence depicting subsequent remedial measures for the purpose of showing the condition, position, and slope of the ramp at the time of Plaintiff's fall.

Plaintiff's use of the photographs depicting evidence of subsequent remedial measures, however, must be followed in a manner consistent with the decision set forth in the Memorandum Opinion and Order Denying Plaintiff's Motion to File Discovery Motions Related to Ramp Out of Time. (Doc. 86.) In support of his argument seeking the admission of photographs depicting subsequent remedial measures, Plaintiff points out that Defendants provide only one photograph of the ramp taken before the addition of remedial measures. (Doc. 73 at 3.) Plaintiff's expert failed to take measurements or provide diagrams of the ramp. (Doc. 63 at 8.) Plaintiff, therefore, is in a difficult position from which to place on Defendants the burden of providing evidence of the ramp at the time of Plaintiff's fall. In light of Plaintiff's failure to diligently follow discovery deadlines, I concluded in my prior Memorandum Opinion and Order that Plaintiff may not reopen discovery to conduct additional investigations of the accident scene. (Doc. 86.) For similar reasons, I will not permit Plaintiff to use the photographs depicting subsequent remedial measures for purposes of his expert witness. *Cf.* DAVID P. LEONARD, THE NEW WIGMORE: SELECTED RULES OF LIMITED

9

ADMISSIBILITY 271 (2002) ("Of course, there will be some cases in which the party argues for admission of the evidence merely as a subterfuge to show the modification and to invite jury misuse. In such cases, it is entirely appropriate for the court to require the party to demonstrate why it cannot employ other means to prove the conditions at the time of the accident."). Accordingly, Plaintiff may use the photographs depicting evidence of subsequent remedial measures to show the position, condition, and slope of the sidewalk at the time of Plaintiff's fall so long as such use remains consistent with my decision denying Plaintiff's Motion to File Discovery Motions Related to Ramp Out of Time.

### To Show the Plaintiff's Clothing

Defendants, by their own admission, do not seek to exclude the pictures of Plaintiff's clothing taken after his visit to the emergency room. (Doc. 77 at 2.) Accordingly, I will not consider these pictures for purposes of this Motion.

### To Show the Weather

Plaintiff argues that the photographs in Exhibit 1 should be admitted to show the weather at the time of Plaintiff's accident. Plaintiff argues that the presence of water puddles in the photographs indicate that rain had fallen around the time of the accident. A non-jury trial carries a low risk that the admission of photographs depicting subsequent remedial measures will give rise to an inference forbidden by the Federal and New Mexico rules of evidence. Accordingly, I will allow Plaintiff to introduce pictures depicting subsequent remedial measures for the purpose of showing the weather at the time of Plaintiff's accident.

### Action of Non-Defendant

Plaintiff argues that the first set of photographs, which depict the ramp shortly after Plaintiff's

fall, should be admitted because the remedial measures shown were taken by non-defendants. According to Plaintiff, Gilbert Romero's deposition establishes that Defendants "denied performing any remedial efforts[.]" (Doc. 73 at 4.) I have concluded that Plaintiff may admit photographs depicting subsequent remedial measures to show the condition, position, and slope of the ramp at the time of Plaintiff's fall and to show the weather at the time of Plaintiff's fall. Accordingly, there is no need to address whether the subsequent remedial measures arose out of actions taken by non-defendants.

## CONCLUSION

For the reasons set forth above, Defendants' Motion in Limine to Exclude Evidence of Subsequent Remedial Measures is DENIED.

IT IS SO ORDERED.

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.          11