## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROGER PIPKINS,

       Plaintiff,

v.                                    CV 05-1200 WPL/RLP

TA OPERATING CORPORATION AND
TRAVEL CENTERS OF AMERICA, INC.
jointly, d/b/a TA TRAVEL CENTERS OF AMERICA,

       Defendants.

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANTS' MOTION TO EXCLUDE
### EVIDENCE AND RECOVERY OF MEDICAL EXPENSES
### WRITTEN OFF BY HEALTH CARE PROVIDER

Defendants bring this Motion in Limine to exclude evidence of and recovery of medical expenses which were written off by Plaintiff's health care provider. Defendants contend that "Plaintiff's bills for past medical expenses reveals [sic] that much of his claimed past medical damages were written off by various health care providers pursuant to their agreement with the federal government under Medicare." (Doc. 62 at 2.) Specifically, Defendants point out that of the $23,812.10 of past medical expenses Plaintiff seeks to recover, "at least $15,533.76 were written off or adjusted by Medicare." (Doc. 62 at 2.) Defendants argue that while the collateral source rule "does not operate to reduce damages recoverable from a wrongdoer . . . medical expenses which are written off or adjusted by healthcare providers pursuant to their agreements under Medicare do not fall within this rule." (Doc. 62 at 3.) Defendants contend that because the collateral source rule is inapplicable to Medicare write offs, the Plaintiff should not recover, or be allowed to introduce into

evidence, the amount of medical expenses written off or adjusted by his health care provider. Plaintiff, in contrast, argues that the collateral source rule, as New Mexico courts have applied that rule, applies where a health care provider's medical bills were written off pursuant to a contract with Medicare.[1] (Doc. 68 at 3.)

## DISCUSSION

Defendants' Motion poses the question of whether the collateral source rule applies to medical expenses written off or adjusted by a health care provider pursuant to an agreement with the federal government under Medicare. Although New Mexico recognizes the collateral source rule, New Mexico courts have not addressed the precise question raised in this Motion.[2] For the reasons discussed below, I conclude that the collateral source rule's development in New Mexico case law reflects New Mexico courts' commitment to the rule's policy and legal underpinnings and strongly suggests that New Mexico courts would apply the collateral source rule to medical expenses written

---

[1] Plaintiff also argues that Defendants "are estopped from disputing the value of the medical services by their Supplemental Answers to Plaintiff's Requests for Admission." (Doc. 68 at 9.) Because I conclude that the collateral source rule applies to the Medicare write offs at issue here, I need not address this additional argument raised in Plaintiff's Response.

[2] New Mexico law appears to govern the resolution of Defendants' Motion, even in light of the Tenth Circuit's recent decision in *Sims v. Great American Life Insurance Co.*, No. 04-5135, 2006 WL 3200866 (10th Cir. Nov. 7). In *Sims*, the Tenth Circuit held that the *Erie* Doctrine does not govern the Federal Rules of Evidence. The Tenth Circuit recognized, however, that with the Federal Rules of Evidence, "Congress did not give federal courts unbridled discretion to preempt state substantive law on all arguably procedural matters." Id. at *7. As *Sims* observed, "Most pertinent to this case, Rule 401 protects against incursion into state substantive law as part of its admissibility assessment. Rule 401 defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* at *8 (internal punctuation omitted). A determination of whether the amount of Medicare write offs are admissible necessarily involves an evaluation of whether New Mexico law allows the recovery of such write offs under the collateral source rule. New Mexico law must be addressed for evidentiary purposes because, under Rule 401, only New Mexico law can resolve whether such write offs are "of consequence to the determination of the action." FED. R. EVID. 401.

off or adjusted by a health care provider pursuant to an agreement with the federal government under Medicare.

### *The Collateral Source Rule*

The collateral source rule applies to prevent "compensation or indemnity received by an injured party from a collateral source, wholly independent from the wrongdoer" from diminishing "the damages otherwise recoverable from the wrongdoer." *Berg v. United States*, 806 F.2d 978, 984 (10th Cir. 1986) (quoting *Kistler v. Halsey*, 481 P.2d 722, 724 (Colo. 1971)). Under New Mexico law, "[c]ompensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer." *Trujillo v. Chavez*, 417 P.2d 893, 897 (N.M. 1966).  In recognizing the policy rationale underlying the collateral source rule, the New Mexico Supreme Court has observed that "[i]n general the law seeks to award compensation, and no more, for personal injuries negligently inflicted. Yet an injured person may usually recover in full from a wrongdoer regardless of anything he may get from a 'collateral source' unconnected with the wrongdoer." *McConal Aviation, Inc. v. Commercial Aviation Ins. Co.*, 799 P.2d 133, 136 (N.M. 1990) (quoting *Rose v. Hakim*, 335 F. Supp. 1221 (D.D.C. 1971)). Under the collateral source rule, a plaintiff may recover "his full losses from the responsible defendant, even though he may have recovered part of his losses from a collateral source." *Id.*

The collateral source rule "is most often applied in cases where an injured party recovers from a tortfeasor amounts for which plaintiff has already been compensated by his insurer." *Lopez v. Safeway Stores, Inc.*, 129 P.3d 487, 492 (Ariz. Ct. App. 2006) (quoting *Taylor v. S. Pac. Transp. Co.*, 637 P.2d 726, 729 (Ariz. 1981)); *see Trujillo*, 417 P.2d at 897 (applying the collateral source rule to a plaintiff's receipt of sick leave from an employer); *Bailey v. Jeffries-Eaves, Inc.*, 414 P.2d

503, 511 (N.M. 1966) (holding that a "plaintiff may recover medical expenses and lost wages incurred by a defendant's negligence, even though plaintiff may have had such items paid for by insurance or otherwise"); *Selgado v. Commercial Warehouse Co.*, 526 P.2d 430, 434 (N.M. Ct. App. 1974) (holding that plaintiff could "recover medical expenses incurred by defendants' negligence even though these items were paid for by insurance"). Similarly, the collateral source rule applies where, "due to a healthcare provider's gratuitous treatment, a plaintiff neither incurs nor is responsible for payment of the reasonable value of medical services, but nonetheless can claim and recover compensation for that value from the tortfeasor." *Lopez*, 129 P.3d at 492.

These examples, insurance proceeds and gratuitous medical treatment, provide two uncomplicated applications of the collateral source rule. Complexity arises, however, when courts apply the rule to expenses that a hospital incurs and bills, but that are ultimately "written off" pursuant to an agreement with the plaintiff's insurance company or with the federal government under Medicare or Medicaid. Contractual agreements often govern the relationship between hospitals and health care insurers (including Medicare and Medicaid). Summer H. Stevens, *Collateral Source Benefits or Windfall for Plaintiffs?* FOR THE DEFENSE, Nov. 2006, at 53. Under these contractual agreements, the insurer pays a reduced amount that the medical services provider accepts as the full payment for the medical services. *Id.* The medical service provider then writes off the difference between the contractual amount and the billed amount. *Id.*

### The Collateral Source Rule Applied to Contractual Write Offs

Despite the absence of direct authority, New Mexico case law, combined with authority from foreign jurisdictions, strongly suggests that New Mexico courts would apply the collateral source rule where a health care provider's medical bills were written off pursuant to a contract with

4

Medicare. Determining whether New Mexico courts would apply the collateral source rule to contractual write offs under a medicare policy involves a two-part analysis. First, I must determine whether New Mexico courts would characterize the amount written off as a benefit or contribution received by the plaintiff from a source collateral to the tortfeasor. Second, if this amount is characterized as a collateral contribution, I must determine whether New Mexico case law evinces policy considerations that militate against the collateral source rule's application to such collateral contributions.

<em>New Mexico Courts Would Treat Contractual<br>Write Offs as a Collateral Contribution</em>

The collateral source rule "provides that benefits or payments received on behalf of a plaintiff, from an independent source, will not diminish recovery from the wrongdoer." *Bynum v. Magno*, 101 P.3d 1149, 1154 (Haw. 2004). "Under the collateral source rule, a tortfeasor is not entitled to have its liability reduced by benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor." *Id.* (quoting *Sam Teague, Ltd. v. Hawai'i Civil Rights Comm'n*, 971 P.2d 1104, 1116 (Haw. 1999)). To trigger the collateral source rule, therefore, a plaintiff must receive a benefit or contribution from a source collateral to the tortfeasor.

Many courts characterize contractual write offs as a benefit or contribution received by the plaintiff from a collateral source and hold that the collateral source rule applies to such write offs. *See Lopez*, 129 P.3d at 495 ("A majority of courts have concluded . . . that plaintiffs are entitled to claim and recover the full amount of reasonable medical expenses charged, based on the reasonable value of medical services rendered, including amounts written off from the bills pursuant to contractual rate reductions."); *Robinson v. Bates*, 828 N.E.2d 657, 673 (Ohio Ct. App. 2005) ("We

5

agree with those jurisdictions— a large majority— that have held that a plaintiff's recovery of the reasonable value of her medical treatment is not limited to the amount paid by her insurance."). In *Lopez*, for example, the Arizona Court of Appeals, in applying the collateral source rule to expenses written off pursuant to an insurance agreement,  observed that "no rational distinction exists between payments made by an insurance carrier on behalf of an injured plaintiff . . .; a healthcare provider's acceptance of reduced payments from health maintenance organizations (HMOs) and government payors . . .; or a provider's write off of portions of billed charges to patients pursuant to contractual relationships with HMOs or government payors." 129 P.3d at 495. For courts following this approach, the amount written off pursuant to an agreement with an insurance carrier (including Medicare or Medicaid) constitutes a benefit or contribution received by the plaintiff from a source collateral to the tortfeasor. *See Acuar v. Letourneau*, 531 S.E.2d 316, 322 (Va. 2000) (recognizing that the proper focus of the collateral source rule is "whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor").

Other courts, in contrast, characterize contractual write offs as illusory and therefore inapplicable to the collateral source rule. *See Moorhead v. Crozer Chester Med. Ctr.*, 765 A.2d 786 (Pa. 2001); *Wildermuth v. Staton*, No: 01-2418-CM, 2002 U.S. Dist. LEXIS 8034, at *15 (D. Kan. April 29, 2002). Courts following this approach observe that the amount written off is never actually paid and thus cannot constitute payment from a collateral source nor a benefit or contribution received by the plaintiff from a collateral source. In *Wildermuth*, for example, the court recognized that "the collateral source rule, by its express terms, simply does not apply to write-offs of expenses that are never paid." *Id.*; *see also Moorhead*, 765 A.2d at 791 ("The collateral source rule does not apply to the illusory 'charge' of [the write off amount] since that amount was not paid by any

collateral source."). The *Wildermuth* court observed that "[b]ecause a write-off is never paid, it cannot possibly constitute payment of any benefit from a collateral source." 2002 U.S. Dist. LEXIS 8034, at *15 (citing *Moorhead*, 765 A.2d at 791). As *Wildermuth* demonstrates, courts following this approach focus on whether the plaintiff has incurred medical expenses as a result of the medical treatment and whether a collateral source has made a payment on behalf of a plaintiff to satisfy the plaintiff's financial liability for the medical treatment. *Id.*; s*ee also Moorhead*, 765 A.2d at 788-91 (concluding that the plaintiff was only entitled to the amount actually paid, and could not, therefore, collect the amount of the Medicare write off).

Defendants' Motion urges adoption of the rule articulated in *Wildermuth* and argues that "because a write off or adjustment is never paid by any source, collateral or otherwise, the amount of money representing a write off or adjustment is not 'compensation received,' and thus, is not subject to the collateral source rule." (Doc. 62 at 4.) Contrary to the approach adopted by courts in cases such as *Wildermuth* and *Moorhead* and urged by Defendants, however, the write off amount is not "illusory." This approach fails to recognize that "the focal point of the collateral source rule is not whether an injured party has 'incurred' certain medical expenses." *Acuar,* 531 S.E.2d at 322. Nor is the focal point of the collateral source rule whether an amount of money has been "paid" by a collateral source. Instead, the proper focus of the collateral source rule is on "whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor." *Id.*

A medical provider's gratuitous provision of medical services illustrates the principle that the collateral source rule's proper focus is on whether the "tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor." *Id.*; s*ee*

*Bynum*, 101 P.3d at 1155 (observing that because a plaintiff "is not required to pay the difference between the standard rate and the Medicare/Medicaid payment, that part of such medical services attributable to such difference could be viewed conceptually as gratuitous service to the plaintiff, so as to come within the collateral source rule"). Where a health care provider gratuitously waives an injured party's financial obligation, the collateral source rule enables the plaintiff to recover the full amount of medical expenses from the tortfeasor. *See Lopez*, 129 P.3d at 492; RESTATEMENT (SECOND) OF TORTS § 920A cmt. c(3) ("[T]he fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services."). In the case of gratuitous medical services, the plaintiff incurs no financial liability. Yet, regardless of the plaintiff's lack of financial liability, the collateral source rule applies because the plaintiff has received a benefit from a source collateral to the defendant. Gratuitous treatment, therefore, constitutes a collateral contribution and triggers application of the collateral source rule.

Contractual write offs reflect a situation analogous to a health care provider's gratuitous provision of medical services and thus yield a similar result under the collateral source rule. *See Bynum*, 101 P.3d at 1156 ("[B]ecause a plaintiff would be able to recover the 'reasonable value' of medical services if such services were rendered gratuitously, it would appear to follow that a plaintiff should be allowed to recover the 'reasonable value' of such services, even if Medicare/Medicaid had already paid a part, or a discounted amount, of the 'reasonable value' of such services."). In the case of gratuitous medical service, the health care provider, out of goodwill, waives the plaintiff's financial liability that arises out of the provision of medical services. Similarly, in the case of contractual write offs, the medical care provider waives the write off amount as required by the contractual agreement between the provider and the plaintiff's insurance carrier. These two situations

differ only in the source of the benefit—in one instance, the benefit springs from the hospital's goodwill; in the other, the benefit arises out of a contractual agreement between the hospital and a third party. In both situations, the plaintiff receives a benefit from a source collateral to the tortfeasor. In neither situation does a collateral source make a payment on behalf of the plaintiff. *But see Moorhead*, 765 A.2d at 791 ("The collateral source rule does not apply to the illusory [write off amount] since that amount was not paid by any collateral source."). In this light, a contractual write off is properly characterized as a contribution from a source collateral to the tortfeasor.

New Mexico's recognition of the collateral source rule and development of that rule suggests that New Mexico courts would characterize the write off amount as a benefit or contribution received by the plaintiff from a source collateral to the tortfeasor. Although New Mexico courts have not addressed the collateral source rule's application to the gratuitous provision of medical services, the legal and policy underpinnings of New Mexico courts' approach to the collateral source rule strongly suggest that New Mexico would apply the collateral source rule to the gratuitous provision of medical services. In *Mobley v. Garcia*, 217 P.2d 256, 257 (N.M. 1950), the New Mexico Supreme Court stated: "The right of redress for wrong is fundamental. Charity cannot be made a substitute for such right, nor can benevolence be made a set-off against the acts of a tortfeasor." *See Martinez v. Knowlton*, 536 P.2d 1098, 1099 (N.M. Ct. App. 1975) ("To *Mobley* we add that a tort-feasor should not get the benefit of the contract between the employee and the employer."). Similarly, in *McConal*, the New Mexico Supreme Court observed that "'[u]sually the collateral contribution necessarily benefits either the injured person or the wrongdoer. Whether it is a gift or the product of a contract of employment or of insurance, the purposes of the parties to it are obviously better served and the interests of society are likely to be better served if the injured person is benefitted than if the

9

wrongdoer is benefitted.'" 799 P.2d at 136 (quoting *Rose*, 335 F. Supp. at 1236). These decisions indicate that New Mexico courts would apply the collateral source rule to the gratuitous provision of medical services. It follows, therefore, that under New Mexico law, the amount of a contractual write off similarly constitutes a benefit received from a source collateral to the tortfeasor.

*New Mexico Courts Would Apply the Collateral Source*
*Rule to Contributions that Take the Form of Contractual Write Offs*

My decision that the amount of a contractual write off constitutes a collateral contribution under New Mexico law does not end my inquiry into the collateral source rule's application to Medicare write offs. Rather, I must determine whether New Mexico's approach to the collateral source rule evinces legal or policy considerations that militate against the collateral source rule's application to collateral contributions that take the form of Medicare write offs.

Courts that have declined the opportunity to apply the collateral source rule to contractual write offs have often done so to prevent a plaintiff from receiving a windfall. As the court in *Wildermuth* noted, the collateral source rule is "intended to prevent a defendant tortfeasor from escaping from full liability for the consequences of his or her wrongdoing and to prevent a windfall to the tortfeasor, who would otherwise profit from the benefits provided by a third party to the injured party. It is not intended to provide a windfall to plaintiffs . . . 'the basic principle of damages is to make a party whole by putting it back in the same position, not to grant a windfall.'" 2002 U.S. Dist. LEXIS 8034, *15-16 (quoting *State ex rel. Stephan v. Wolfenbarger & McCulley, P.A.*, 690 P.2d 380 (Kan. 1984)). Defendants' Motion echoes this approach and argues that Plaintiff should not be able to recover more than his actual losses.

The consequence of the approach urged by Defendants, however, is to allow the tortfeasor

to receive a windfall in the amount of the benefit conferred to the plaintiff from a source collateral to the tortfeasor. Such a result would thwart the policy rationale underlying New Mexico courts' adoption of the collateral source rule. The New Mexico Supreme Court's decision in *McConal* affirmed the plaintiff-oriented approach underlying the collateral source rule and indicated that under New Mexico law, any windfall arising from the collateral source rule should benefit the plaintiff, and not the tortfeasor. 799 P.2d at 136 (recognizing that "if a collateral resource is to benefit a party, it should better benefit the injured party than the wrongdoer"); *see also Lopez*, 129 P.3d at 492 ("In many respects, the rule 'is punitive' because it 'allows a plaintiff to fully recover from a defendant for an injury even when the plaintiff has recovered from a source other than the defendant for the same injury.'" (quoting *Norwest Bank (Minnesota), N.A. v. Symington*, 3 P.3d 1101, 1109 (Ariz. Ct. App. 2000))). Moreover, New Mexico case law, along with the policy rationale underlying New Mexico's adoption of the collateral source rule, indicates that Medicare write offs would be treated the same as any other benefit a plaintiff may receive from a collateral source. Merely because a Medicare write off arises from a program of the federal government does not militate against the policy rationale in New Mexico law favoring a plaintiff's, rather than a tortfeasor's, receipt of any windfall. Accordingly, New Mexico law does not prevent Plaintiff from introducing into evidence, or from recovering, medical expenses written off by a health care provider.

## CONCLUSION

For the reasons set forth above, Defendants' Motion in Limine to Exclude Evidence and Recovery of Medical Expenses Written Off By Health Care Provider (Doc. 62) is DENIED.

IT IS SO ORDERED.

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

12