IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROGER PIPKINS,

    Plaintiff,

v.

CV 05-1200 WPL/RLP

TA OPERATING CORPORATION AND
TRAVEL CENTERS OF AMERICA, INC.
jointly, d/b/a TA TRAVEL CENTERS OF AMERICA,

    Defendants.

## DECISION

The Court, having considered the evidence presented on December 11 and 12, 2006, together with the Stipulated Facts set out in the Pretrial Order and the Requested Findings of Fact and Conclusions of Law submitted by the parties, and being fully advised about all issues in this case, enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. On June 6, 2005 Roger Pipkins was injured when he slipped while running in a light rain on a handicap ramp at the Santa Rosa TravelCenter operated by TA Operating Corporation.

2. On June 3, 2005 Davian Salazar, an employee of TA Operating Corporation, painted the handicap ramp.

3. Defendants were required to keep the surface of the handicap ramp slip resistant under expected environmental conditions. Walkway surfaces that are painted must contain an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant when wet conditions are reasonably foreseeable.



4. Brock Carter, Pipkins' liability expert, went to the scene of the incident and touched the ramp. Based on that, he testified that no abrasive material had been added to the paint, and that the ramp surface was not slip resistant. Carter also testified that the ramp was too steep.

5. Carter admitted that there are tests to determine the coefficient of friction of the paint, and that he did not know of any authority that endorsed the "touch" test he used in this case. Carter did not take any measurements of the ramp, and purported to determine the slope of the ramp by looking at photographs. Carter could cite no authority that supported determining the slope of a ramp by reviewing photographs. Carter relied upon the Slip and Fall Handbook and the National Safety Code in formulating his opinions, and admitted that those authorities are not generally accepted as authoritative in the safety field. Carter deviated from his standard procedures by failing to take photographs and measurements at the scene.

6. Defendants presented contradictory testimony about when and where the additive (Skid-Tex) and paint for the ramp were purchased, and who added the Skid-Tex to the paint. Louis Baca and Davian Salazar testified in their depositions that the paint and Skid-Tex were purchased on June 3, 2005 at the True Value Hardware in Santa Rosa. Baca testified on direct examination at trial that he did not know where the supplies were purchased and that the paint and Skid-Tex must have been purchased in Albuquerque. Defendants did not produce any invoices to reflect the purchase of paint or Skid-Tex. Gilbert Romero testified that he did not witness the ramp being painted on June 3, 2005. However, he insisted that he watched the Skid-Tex being added to the paint. He testified on deposition that he saw Louis Baca add the Skid-Tex to the paint, but at trial testified that it was Davian Salazar who did so.

7. Defendants presented contradictory testimony about the work performed by Davian

Salazar. Although Louis Baca testified that Salazar stripped the old paint off the ramp before he repainted it, Salazar denied doing so. Salazar's testimony about the consistency of the Skid-Tex, it's color, and that he was able to add the contents of the Skid-Tex container to the gallon of paint without pouring any paint out first calls his credibility into question.

8. Defendants presented other conflicting testimony. Despite testimony from Samantha Pipkins and Lillian Perea that Pipkins was wearing long pants and shoes when they arrived in Santa Rosa, and a photograph of Pipkins at the scene that confirms that, Gilbert Romero testified that Pipkins was wearing shorts and thongs (flip flops) on his feet. Romero also testified that Pipkins told him as they were driving to the emergency room that it was silly of him to be running in the rain. Romero admitted that he did not tell Pipkin's attorney of this statement when Pipkin's attorney questioned Romero during his deposition, but only testified to the contents of the statement when asked by Defendants' attorney during the deposition.

9. Pipkins sustained bruising to his right hip and side and a serious fracture of his right wrist (a displaced comminuted interarticular right wrist Colles fracture) when he fell. He was treated initially in Santa Rosa by Dr. Abriola, who performed a closed reduction, and subsequently by Dr. Paul Legant, who performed surgery to apply an external fixator.

10. Pipkins has made a good recovery from his wrist fracture, but may have made a better recovery by completing his occupational therapy and obtaining another edema glove. While Dr. Legant testified that Pipkins will likely suffer some post-traumatic arthritis in the future, he was unable to state to a reasonable degree of medical probability that Pipkins would incur additional medical expenses as a result.

11. Pipkins has incurred necessary and reasonable medical expenses related to the

accident of $23,811.10.

12. As a direct and proximate result of the fall Pipkins has suffered personal injury damages in the amount of $115,000.00.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because it is the District Court and division embracing the place when this action is pending.

3. Pipkins has failed to establish that the methods employed by Brock Carter in reaching his conclusions are scientifically correct and that his opinions are based on facts which satisfy Rule 702's reliability requirements. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). Defendants' Motion in Limine to exclude the testimony of Brock Carter is hereby granted, and I will not consider that testimony in deciding this case.

4. Every person has a duty to exercise ordinary care for his own safety. Pipkins failed to use ordinary care by running to his vehicle in the rain when he left the TravelCenter.

5. Defendants had a duty to use ordinary care to keep the premises of TA TravelCenter safe for the ordinary use of visitors. Defendants did not meet this standard because its employees failed to add the Skid-Tex to the paint for the ramp, and this negligence caused injuries and damages to Pipkins.

6. Defendants are 80% at fault and Pipkins is 20% at fault for the incident that occurred on June 6, 2005.

7. Pipkins has sustained personal injury damages in the amount of $115,000.00.

8. Pipkins is entitled to recover judgment against Defendants in the amount of

$92,000.00, together with allowable costs.

9.      Pipkins is entitled to post-judgment interest on all damages and costs at the rate of fifteen percent (15%) per year from the date of entry of judgment until paid.

10.     All Requested Findings of Fact and Conclusions of Law that are not contained in or consistent with this Decision are refused.

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.